HASKELL AND BARKER CAR COMPANY v. BROWN ET AL.

[No. 9,760.   Filed November 2, 1917.   Rehearing denied March 15,
1918.]

1. MASTER AND SERVANT.—Workmen's Compensation Act.—Appeal.
—Assignment of Error.—Sufficiency.—On an appeal from an
award of compensation by the Industrial Board, an assignment
of error that the award is not sustained by sufficient evidence is
proper, and it challenges the sufficiency of the evidence to sus-
tain every issuable fact essential to the sustaining of the award.
p. 181.

2. MASTER AND SERVANT.—Workmen's Compensation Act.—Pro-
ceedings for Compensation.—Burden of Proof.—Under the Work-
men's Compensation Act, Acts 1915 p. 392, the burden is on the
applicant for compensation for the death of her husband to prove
by a preponderance of the evidence facts showing not only that
she is a dependent of deceased, but also that he received an injury
resulting in his death and that the injury arose out of and in the
course of his employment.  p. 182.

3. MASTER AND SERVANT.—Workmen's Compensation Act.—Appeal.
—Evidence.—Sufficiency.—An award of compensation will not be
disturbed on appeal if there is evidence to support each element
essential to a recovery.  p. 183.

4. MASTER AND SERVANT.—Workmen's Compensation Act.—Proceed-
ings for Award.—Burden of Proof.—Although the burden is on
the applicant for workmen's compensation to prove each element
essential to a recovery this rule is met by any evidence, however
slight, which is sufficient to make a reasonable man conclude
in applicant's favor.  p. 183.

5. MASTER AND SERVANT.—Workmen's Compensation Acts.—Powers
of Industrial Board.—Appeal.—Review.—Findings.—Inferences.
—The Industrial Board may, like a court or jury, draw reasonable
inferences from the facts and circumstances in evidence, and
where it does so, the court on appeal cannot say that the fact
found as a result of such inferences is not supported by sufficient
evidence, although such facts and circumstances are of a nature
that reasonable men might draw opposite inferences.  p. 184.

6. MASTER AND SERVANT.—Workmen's Compensation Act.—Appeal.
—Sufficiency of Evidence.—Scope of Review.—In determining
whether the evidence is sufficient to sustain an award, the court
on appeal can consider only that evidence most favorable to
appellee.  p. 184.

7. MASTER AND SERVANT.—Workmen's Compensation Act.—Con-

*struction.—Accident.*—The word "accident" in the Workmen's Compensation Act, Acts 1915 p. 392, is used in its popular sense, and means any unlooked for mishap or untoward event not expected or designed.   p. 187.

8. MASTER AND SERVANT.—*Workmen's Compensation Act.—Accident.—Evidence.—Sufficiency.*—In a proceeding under the Workmen's Compensation Act, Acts 1915 p. 392, for compensation for the death of a servant, evidence showing, in substance, that decedent was employed in unloading heavy steel sheets, which work required a great deal of physical effort when it was necessary to separate sheets which at times became jammed together, that decedent became ill shortly after assisting in prying two of the sheets apart, and that the attending physician found deceased suffering from acute anuerism or bulging of the wall of a blood vessel, which is frequently caused by the strain incident to heavy lifting, is sufficient to sustain the conclusion of the Industrial Board that decedent's injury and consequent death was the result of an accident.   p. 187.

9. MASTER AND SERVANT.—*Workmen's Compensation Acts.—Construction.—Accident in Course of Employment.*—The words "by accident growing out of and in the course of the employment," as used in workmen's compensation acts, should be given a broad and liberal construction in order that the humane purpose of such acts may be realized.   p. 188.

10. MASTER AND SERVANT.—*Workmen's Compensation Act.—Injuries in Course of Employment.*—In a proceedings under the Workmen's Compensation Act, Acts 1915 p. 392, for compensation for the death of a servant, where the undisputed evidence showed conclusively that decedent at the time of his injury was performing part of his duties at a time and place required by such duties, his accident occurred in the course of his employment.   p. 189.

11. MASTER AND SERVANT.—*Workmen's Compensation Act.—Proceedings for Compensation.—Evidence.—Sufficiency.*—In a proceedings before the Industrial Board for compensation, the admission of hearsay evidence, even though error, would not entitle appellant to a reversal of an award for applicant, where the evidence aside from the hearsay testimony, was sufficient to sustain the award.   pp. 190, 191.

From the Industrial Board.

Proceedings for compensation under the Workmen's Compensation Act by Ida Brown and another against the Haskell and Barker Car Company. From

an award for applicant, the defendant appeals. *Affirmed.*

*Bernard Korbly, Williad New, Cornelius R. Collins* and *Jeremiah Collins,* for appellant.

*Joseph W. Hutchinson,* for appellee.

HOTTEL, C. J.—This is an appeal from an award of the Industrial Board of Indiana, by the terms of which appellee Ida Brown, as wife of Michael Brown, deceased, was awarded 300 weeks' compensation against the appellant, at the rate of $6.87 per week, $100 burial expenses, and the reasonable expense of the physician who attended deceased during the period of the illness which resulted in his death.

The errors assigned and relied on for reversal are as follows:

"First. The Industrial Board erred in its rulings of law upon which the award is based, in this: (a) The Industrial Board erred in finding that decedent was personally injured by *accident;* and (b) The Industrial Board erred in finding that decedent suffered personal injuries by accident *'arising out of and in the course of the employment.'* Second. The Industrial Board erred in its rulings of law in considering the hearsay evidence of each of the three witnesses, Frank R. Warren, Ida Brown and Etta Brown, upon which the award in this cause is based. Third. The award of the Industrial Board of Indiana is not sustained by sufficient evidence. Fourth. The award of the Industrial Board of Indiana is contrary to law."

It is contended by appellees that no question is presented by the first assigned error. Assuming that

they are right in this contention, it avails them 1. nothing, because they in effect concede, and correctly so, that the questions attempted to be presented by rulings (a) and (b) respectively under said first assigned error are in fact presented by the third assigned error. In view of the fact that a motion for new trial is not provided or contemplated by the act in question, we think the third assigned error is proper under the original act, and that when assigned in this court it challenges the sufficiency of the evidence to sustain every issuable fact essential to the sustaining of the award of said board. It may be remarked in this connection that the legislature in 1917, by an amendment of §61 of the original act, authorizes an assignment of errors to the effect that the award of the full board is contrary to law, and providing that such an assignment challenges "the sufficiency of the facts found to sustain the award, and the sufficiency of the evidence to sustain the finding of facts."

"The burden of proving the essential facts necessary to establish a case warranting the payment of compensation rests upon the dependent * * * as much as it does upon a plaintiff in any proceeding at law. * * * The elements that need to be proved are quite different from those in the ordinary action at law or suit in equity, but, so far as those elements are essential, they must be proved by the same degree of probative evidence." *Sponatski's Case* (1915), 220 Mass. 526, 527, 108 N. E. 466, L. R. A. 1916A 333; *Woods* v. *T. Wilson, etc., Co.* (Ct. of App.) 6 B. W. C. C. 750, 765; *Sanderson's Case* (1916), 224 Mass. 558, 113 N. E. 355.

It follows that, under our statute, the burden was

on appellee to prove by a preponderance of the evidence facts showing not only that she is a
2. dependent of deceased, but also (1) that deceased received an injury resulting in his death; (2) that such injury arose out of his employment with appellant; and (3) that it was received in the course of such employment. *Union Sanitary Mfg. Co.* v. *Davis* (1916), 64 Ind. App. 227, 115 N. E. 676; *King's Case* (1915), 220 Mass. 290, 107 N. E. 959; *McCoy* v. *Michigan Screw Co.* (1914), 180 Mich. 454, 147 N. W. 572, L. R. A. 1916A 323; *Sponatski's Case, supra; Reimers* v. *Proctor Pub. Co.* (1914), 85 N. J. Law 441, 89 Atl. 931; *Chicago, etc., R. Co.* v. *Industrial Board* (1916), 274 Ill. 336, 113 N. E. 629; *Sanderson's Case, supra.*

Appellant insists that as to each of these elements essential to recovery the evidence was insufficient to sustain the finding of the board, and cites the following cases: *Voelz* v. *Industrial Commission* (1915), 161 Wis. 240, 152 N. W. 830; *Doherty's Case* (1915), 222 Mass. 98, 109 N. E. 887; *Perry* v. *Ocean Coal Co., Ltd.* (1912), 5 B. W. C. C. 421; *Perry* v. *Baker* (1901), 3 W. C. C. (Eng.) 29; *Kerr* v. *Ritchies* (1913), 6 B. W. C. C. 419; *Beaumont* v. *Underground Elec. R. Co.* (1912), 5 B. W. C. C. 247; *Southall* v. *Cheshire County News Co., Ltd.* (1912), 5 B. W. C. C. 251; *Hawkins* v. *Powell's, etc., Coal Co.* (1911), 4 B. W. C. C. 178; *Steers* v. *Dunnewald* (1914), 85 N. J. Law 449, 89 Atl. 1007; *Sanderson's Case, supra; O'Hara* v. *Hayes* (1910), 3 B. W. C. C. 586; *Farmer* v. *Stafford, Allen & Sons, Ltd.* (1911), 4 B. W. C. C. 223; *Spence* v. *W. Baird & Co., Ltd.* (1912), 5 B. W. C. C. 542; *Powers* v. *Smith* (1910), 3 B. W. C. C. 470; *Barnabas* v. *Bersham Colliery Co.* (1910), 4. B. W. C. C. 119; *Sav-*

*age's Case* (1915), 222 Mass. 205, 110 N. E. 283; *Chicago, etc., R. Co.* v. *Industrial Board, supra.*

No good purpose could be served by an attempt to distinguish the facts in each of these cases respectively from those presented by the record in the instant case, but we deem it sufficient to say generally that those cases in which the court of appeal holds against the dependent, are cases in which it clearly appears either that there was a total failure as to one or more of the essential elements of recovery above indicated, or otherwise the finding below was against the dependent, and hence the court of appeal very properly held that they could not weigh the evidence, and hence could not disturb the finding below. The seven cases last cited *supra* are of the character last mentioned, and some of them very properly emphasize the fact that the finding below was against the dependent and that for such reason the judgment below could not be disturbed, and that a reverse finding of such board would for the same reason be likewise sustained. These cases would be controlling in the instant case if the finding of the Industrial Board had been in appellant's favor. The finding in the instant case is for the dependent, and if each

3. of the elements indicated have any evidence for their support, the award cannot be disturbed by this court. The rule quoted *supra* from Sponatski's case does not mean that the dependent must demonstrate his case, but it is no more than an expression in different language of the well-recognized rule applicable generally in all proceedings at law, viz., that if, as to any fact essential to

4. recovery the plaintiff offers no evidence in his favor upon which a reasonable man can act,

he must fail. It is true, as appellant in effect contends, that as to said essential elements of recovery the dependent must have some evidence from which the rational mind is relieved from that uncertainty which results merely from speculation or fancy. This demand, however, is met by any evidence, though slight, which is "sufficient to make a reasonable man conclude in his favor" as to such essential facts. *Sponatski's Case, supra,* and cases cited on page 528.

And such board, like a court or jury, may draw reasonable inferences from the facts and circumstances in evidence, and where it draws such inferences from facts and circumstances which in their nature are such that reasonable men might draw either the same or opposite inferences, this court cannot say that the fact found as a result of such inference is not sustained by sufficient evidence. *Western Union Tel. Co.* v. *Louisville, etc., R. Co.* (1915), 183 Ind. 258, 263, 108 N. E. 951, Ann. Cas. 1917B 705; *Gish* v. *St. Joseph Loan, etc., Co.* (1918), 66 Ind. App. 500, 113 N. E. 394, 396; *Interstate Iron, etc., Co.* v. *Szot* (1916), 64 Ind. App. 173, 115 N. E. 599.

In determining the question whether the evidence is sufficient to sustain said award, that evidence alone most favorable to appellee must be considered.

6.  *Southern Product Co.* v. *Franklin Coil Hoop Co.* (1914), 183 Ind. 123, 106 N. E. 872.

The evidence pertinent to the facts challenged, *supra,* as not being proved, is in brief to the following effect: On the day of his injury, decedent was in appellant's employ engaged in unloading steel sheets from a car. Two of these sheets when riveted together would make the end of a box car. Each sheet weighed from 465 to 485 pounds, and was moved by

means of a derrick or crane operated by a locomotive. The attachment of the crane to the sheets was by means of a chain and hook, the latter being inserted in a rivet hole in the top edge of the sheet. Decedent and another man worked on the car and made the attachment of the hook to the sheet, and of the chain to the hook, it being a part of decedent's duty to guide the chain as the chain descended. The sheets stood on edge in the car and sometimes became jammed together, and their separation required a great deal of physical effort. This work at times required heavy lifting, straining, effort, and the doing of it required a man of good physical strength. "If there are any weaklings they do not stay around the work very long." *On the morning of his injury, decedent came to his work feeling well.* The man who was working at decedent's side at the time of his injury testified to the following effect, viz.: *"I saw Brown when he let go of the hooks, I saw him put his hand to his throat and noticed that there was some-thing wrong with him,* I did not know what. *I noticed him go like he was staggering "and in a choking dis-position."* I *worked with him since December 23* (The time of the accident was April 5.) *doing the same kind of work and never noticed him have any attack before. All of a sudden after he had appar-ently been fixing the hooks or lifting, or doing some-thing that I did not see, he staggered and got out of the car."*

The witness Ziesmer testified in effect that *dece-dent steered the chain and gave the signal to lift, that just the minute he got the hook in and gave the signal to pull the chain a little he said something had hap-pened to him and grabbed for his throat—said he was*

*sick. This was about thirty minutes after they had broken into this car. They had to pry to get the first two sheets apart. They were flattened together "and we had to raise them out to get those hooks into the hole so we could raise them up. We had a crowbar and he was on one end and I was on the other. We made about one pry."*

Shortly after this injury, decedent went home and went to bed and Dr. Warren was called. He testified specifically to the condition in which he found decedent, that he was suffering from anuerism—a bulging of the wall of the blood vessel. ":You have a weakening there first, but that alone would not be anuerism. After it swells it is anuerism. *In this case it was a sudden dilation from the artery that I found."* There must have been degenerative changes in the structure of the blood vessel wall which would weaken it. It is not conceivable that the blood vessel would give way without the predisposing cause. "I did not make an examination to see what that was, but *the symptoms were incontrovertible. The anuerism was already there when I was called. From the history of the case, from what they told me coming on at that time, my opinion was that the strain was undoubtedly the exciting cause."* If he had been lifting, the dilation would have been more during the process of strain, because during the strain the blood pressure is increased. It is often the case that if he followed lifting, did it daily, the dilation would grow until it became. more weakened, and the time. would come when some small act would cause a dilation. "I don't know what the condition would have been in the particular case, but it does often happen that way." People suffer from trouble of this sort and live to be

old. Where you have a predisposing condition it is also a fact that strains cause troubles of the kind from which Brown suffered. There are people living with this predisposing condition, who if they do not have some exciting cause may live to be quite old and die of something else. *"It would be the reasonable theory that Brown's condition was aggravated from some action on his part immediately preceding the time I was called to see him. I do not believe that anuerism would develop to the size found in this case if there was no exciting cause." Without any exciting cause, it would come up gradually and slow. They usually do come gradually, but this was sudden and acute so it must have been due to an exciting cause. When they come suddenly there must have been some increase of blood pressure or some strain to bring it that way all of a sudden.*

The word "accident" in the act in question is used in its popular sense, and means "any unlooked for mishap or untoward event not expected or designed." *Fenton* v. *Thorley & Co., Ltd.* (1903), App. Cas. 443; *Boody* v. *K. & C. Mfg. Co.* (1914), 77 N. H. 208, 213, 90 Atl. 859; *Bryant, Admx.,* v. *Fissell* (1913), 84 N. J. Law 72, 86 Atl. 458; *United Paperboard Co.* v. *Lewis* (1917), 65 Ind. App. 356, 117 N. E. 276, and cases there cited.

7.

The conclusion of the Industrial Board to the effect that decedent's injury and consequent death was the result of accident is at least justified, if not forced, by said evidence and the cases cited.

8.

In considering the question whether an accident arose both out of and in the course of an employment, the Supreme Court of New Jersey, in the case

of *Bryant, Admx., v. Fissell, supra,* pages 76 and 77, said: "For an accident to arise out of and in the course of employment, it must result from a risk reasonably incidental to the employment. As was said by Mr. Lord Justice Buckley in *Fitzgerald* v. *Clarke & Son* (1908), 2 K. B. 796. 'The words "out of" point, I think, to the origin and cause of the accident; the words "in the course of" to the time, place and circumstances under which the accident takes place. The former words are descriptive of the character or quality of the accident. The latter words relate to the circumstances under which an accident of that character or quality takes place. The character or quality of the accident as conveyed by the words "out of" involves, I think, the idea that the accident is in some sense due to the employment. It must be an accident resulting from a risk reasonably incident to the employment.'

"We conclude, therefore, that an accident arises 'in the course of the employment' if it occurs while the employe is doing what a man so employed may reasonably do within a time during which he is employed, and at a place where he may reasonably be during that time." See, *United Paperboard Co.* v. *Lewis, supra,* and cases there cited.

This court has given its approval to the holding which obtains generally in other jurisdictions that the words "by accident growing out of and in the course of," should be given a broad and liberal construction in order that the humane purpose of the act of which they form a part should be realized. *United Paperboard Co.* v. *Lewis, supra; Holland, etc., Sugar Co.* v. *Shraluka* (1917), 64 Ind. App. 545, 116 N. E. 330.

This court in the case first cited also said that an accident is said to arise "out of" the employment "when there is apparent to the rational mind, upon a consideration of all the circumstances, a causal connection between the conditions under which the work was required to be performed and the resulting injury." See also cases there cited.

The undisputed evidence in this case shows conclusively that decedent at the time of the accident and injury was doing that which, under his employment, he might do as a part of his duties at a time and place required by such duties, and hence that, under the law, as indicated in the cases cited *supra,* his accident occurred "in the course of his employment."

The only question concerning which there seems to be any room for doubt in the instant case is whether the accident arose out of the decedent's employment, and, in our judgment, the seriousness of this question is practically eliminated by the rule of law, above stated, which prevents this court from weighing the evidence and compels it to affirm the award of the Industrial Board unless it can say that such board had no evidence, either direct or circumstantial, which could be said to furnish any ground upon which a reasonable mind might predicate the inference drawn by said board as to the existence of such fact. We deem it unnecessary to further extend this opinion by a repetition of the evidence which, we think, supports and authorizes the inferences drawn by the board. We have italicized portions of the evidence which we think at least tend to support such inferences, and which serve to distinguish the facts of the instant case from the facts of those cited and relied

on by appellant. As tending to support our conclusion, see also, *Fowler* v. *Risedorph Bottling Co.* (1916), 161 N. Y. Supp. 535; *McArdle* v. *Swanson Harbour Trust* (1915), 8 B. W. C. C. 489, 11 N. C. C. A. 175; *Fisher's Case* (1915), 220 Mass. 581; *Doughton* v. *Hickman, Ltd.* (1913), 6 B. W. C. C. 77.

Appellant further urges that reversible error is presented by his second assigned error. Appellee meets this contention with the claim that no objection was made, or exception taken, to the admission of such hearsay evidence before the member of the board before whom the original hearing was had, that appellant elicited, or at least, invited, the admission of such evidence, and that, in any event, such evidence is made proper by a rule promulgated by the Industrial Board. It is also contended that under the act in question, and the decided cases construing similar acts, hearsay evidence may be heard by such board, and that its admission furnishes no ground for reversal. Other questions of practice and procedure are suggested by the parties, as presented by the record, which they insist are pertinent to their several contentions. The conclusion which we have reached makes it unnecessary to discuss or determine these several questions, further than to say generally that the decided cases recognize that the Industrial Board is essentially an administrative body rather than a court, and that, in the admission of evidence such a body should not be held to the same strict rules as are applicable to courts, that the admission of incompetent evidence by such board will not operate to reverse its award where there is any competent evidence to support it. *United Paperboard Co.* v. *Lewis, supra; First Nat.*

*Bank* v. *Industrial Commission* (1915), 161 Wis. 526, 528, 529, 154 N. W. 847.

Appellant, in his reply brief, in effect concedes the rule to be as we have stated, but insists that without the hearsay evidence there is no evidence to sustain the board's award. In out statement of the evidence, *supra,* we have omitted any reference to the evidence complained of by appellant in its brief as hearsay, except an opinion of the attending physician based on the history of the case as it was given to him. This physician was offered by appellant and while his opinion elicited on cross-examination was based on facts communicated to him by the decedent, such facts were substantially in accord with those above indicated as testified to by other witnesses. So that independent of the hearsay evidence there is sufficient evidence to prevent a reversal of the award of said board on the ground of its being insufficient to sustain said award.

It follows that under the rule indicated the admission of such evidence would in no event entitle appellant to a reversal of the award of the board.

The award of said board is therefore affirmed.

Note.—Reported in 117 N. E. 555. Workmen's compensation: what constitutes injuries arising out of and in the course of employment within meaning of act, L. R. A. 1916A 40, 232, 1917D 114; Ann. Cas. 1913C 4, 1914B 498, 1916B 1293, 1918B 768; C. J. Workmen's Comp. Acts 64.