## In Re Bollman.

[No. 10,762.    Filed March 16, 1920.]

1. MASTER AND SERVANT.—*Workmen's Compensation.—"Arising Out Of" the Employment.—Construction.*—The words "by accident arising out of" the employment as used in §2 of the Workmen's Compensation Act (§80201 *et seq.* Burns' Supp. 1918, Acts 1915 p. 392) take a liberal construction to effect the humane purposes of the act, the question in any particular case being determined not upon the minute details of what the employe was doing at the time of the accident, but rather upon whether the accident was due to a hazard to which he would not have been exposed apart from the business in which he was employed.    p. 48.

2. MASTER AND SERVANT.—*Workmen's Compensation.—Death From Fall of Articles Upon Employe Retired in Barn for Night.*—The death of a thresher's engineer was by accident arising out of his employment within the meaning of the Workmen's Compensation Act, where, by the terms of his employment, he was required to travel from farm to farm and to stay at night on the premises where the threshing outfit happened to be, and as watchman guard and protect it from fire and trespassers, and where his death was caused after he had there retired for the night, in order to be near the outfit, by the fall of a wagonbed suspended in the driveway of a barn on the premises where the outfit was.    p. 49.

From the Industrial Board of Indiana.

Certified questions of law.

Proceedings under the Workmen's Compensation Act by Hannah Bollman against Harve Lewellen.    Certified questions by the Industrial Board.    *Answered.*

REMY, P. J.—The Industrial Board has certified to this court questions of law based upon the following facts:    One Lewellen, a resident of Montgomery county, owned a threshing outfit which he had operated in his community for more than ten years immediately prior to July 16, 1919.    During all of said time Lewellen had in his employ as engineer one Bollman, whose duty it

was to operate the engine used in propelling the machinery and in moving the same from farm to farm.   Late in the evening on July 16, 1919, Lewellen moved his threshing machinery onto the farm of one Downey for the purpose of threshing wheat the following day.   No threshing was done on the evening of said date, but the machine was set about 150 yards from the barn and 250 yards from the house.   Under the terms of his employment, "Bollman was required to stay of nights on the premises where the machinery was left, and to keep watch on the machinery to protect it from fire and trespassers."   Lewellen had done the threshing on the Downey farm during the eight years immediately preceding July 16, 1919, and during said years it had been the custom of Bollman to remain over night and sleep in the Downey barn, though there was room for him to sleep in the Downey residence, and each year he had been invited to sleep there.   On the evening of July 16, 1919, at retiring time, Bollman was invited by Downey to sleep in the residence, but he declined to do so on the ground that it was cooler in the barn, and that he would be nearer the machinery, which was the same reason given for sleeping in the barn in the previous years. Accordingly Bollman and other employes of Lewellen, on the night in question, prepared for themselves beds for sleep in the driveway of the Downey barn.   Immediately over this driveway was a heavy wagon bed suspended by ropes, one of which suddenly broke during the night, causing the wagon to fall upon Bollman, and inflicting upon him such injuries as caused his death on July 24, 1919.   Bollman left surviving him, as his only dependent, his wife, Hannah Bollman, with whom he was living at the time of his death.

It is conceded by the employer that the dependent is entitled to an award of 300 weeks' compensation at the rate of $13.20 per week, if the death of Bollman

was due to an injury arising out of and in the course of his employment by Lewellen.

Upon the foregoing facts, the Industrial Board respectfully submits the following questions for determination:    (1) Did the accident causing the injury resulting in the death of Bollman arise out of his employment as engineer by Lewellen?    (2) Would a finding that the accident causing the death of Bollman arose out of his said employment be sustained by sufficient evidence?  (3) Would such finding be according to law?

That the accident resulting in Bollman's death occurred in the course of his employment is not questioned.

The important question is whether the accident

1.    arose "out of" such employment.    The words "by accident arising out of" the employment as used in §2 of the Workmen's Compensation Act (Acts 1915 p. 392, §80201 et seq. Burns' Supp. 1918) should be liberally construed so as to accomplish the humane purposes of the act. *Granite Sand, etc., Co.* v. *Willoughby* (1919), 70 Ind. App. 112, 123 N. E. 194.    It is said that an accident arises "out of" the employment, if it is in some sense due to the employment—if it results from a risk which is reasonably incident thereto. *Haskell, etc., Car Co.* v. *Brown* (1918), 67 Ind. App. 178, 117 N. E. 555; *Bryant, Admx.,* v. *Fissell* (1913), 84 N. J. Law 72, 86 Atl. 458.    But, as was stated by this court in *Nordyke, etc., Co.* v. *Swift,* (1919), 71 Ind. App. 176, 123 N. E. 449, the difficulty does not arise so much from a determination of a proper definition of the clause under consideration as it does from an application of the same to a given state of facts.    The question in each case must be determined from a consideration of its own facts and circumstances.    The question whether the accident resulting in injury or death in a given case arises out of the employment does not depend upon the minute details of what the employe was doing at the time, but

rather upon the question as to whether the accident was due to a hazard to which the employe would not have been exposed apart from the business in which he was employed. *Great Lakes Dredge, etc., Co.* v. *Totzke* (1919), 69 Ind. App. 303, 121 N. E. 675.

In the case at bar, it will be observed that Bollman's employment was not for certain hours of each day with no obligation to his employer for the remaining 2. hours of the twenty-four, as is usual in employment contracts. By the terms of his agreement, Bollman was required to leave his own domicile, and travel from farm to farm with the threshing outfit, to stay of nights on the premises where the machine happened to be, and as watchman to guard and protect it from fire and from trespassers. Since he was not only to act as engineer in the operation of the machine, but was to remain over night and act as watchman, it must be presumed that it was not the intention of the parties that Bollman was to remain awake through each night, but rather that he should sleep on the premises where the machine was left, and be ready for such emergency as might arise. It cannot be said that Bollman could not, and did not, render service to his employer while asleep, though it is not stated that he was asleep at the time of the accident, but that he "had retired in the driveway of the barn for the night." Under the facts stated, he had, as had long been his custom, placed himself not far from the property, so that the noise made by trespassers might the more easily awaken him should he be asleep, and so that he could the more quickly reach the property should help be needed. The accident which caused Bollman's death was due to a hazard to which he would not have been exposed apart from his employment. The accident was the result of a risk which was reasonably incidental to the employment. We there-

fore hold that the death of Bollman was by accident arising out of his employment by Lewellen. See *Chitty* v. *Nelson*, L. R. A. 1916A 58, note; *Moyse* v. *Northern Pac. R. Co.* (1910), 41 Mont. 272, 108 Pac. 1062; *Haller* v. *City of Lansing* (1917), 195 Mich. 753, 162 N. W. 335, L. R. A. 1917E 324; 1 Bradbury, Workmen's Compensation (2d ed.) 448. We also hold that a finding by the board that the accident causing the death of Bollman arose out of his employment would be sustained by sufficient evidence, and that such finding would not be contrary to law.