ESTEY PIANO CORPORATION, EMPLOYERS MUTUAL OF WAUSAU
*v.* HILDA B. STEFFEN.

[No. 2-873A190. Filed May 20, 1975. Rehearing denied June 19, 1975.]

*Thomas W. Yoder, Edward L. Murphy, Jr., Livingston, Dildine, Haynie & Yoder,* of Fort Wayne, for appellants.

*James L. Larson, Jackson, Parrish, Eggers & Larson,* of Fort Wayne, for appellee.

SULLIVAN, P.J.—Appellant, Estey Piano Corporation (Estey), appeals from an award by the Industrial Board in favor of appellee, Hilda B. Steffen (Steffen).

The facts most favorable to Steffen and to the Board's decision are as follows:

Since 1959, Steffen has worked for Estey sanding various piano parts by hand and machine. In early October 1969, Steffen was occasionally requested by the job foreman to sand "keybeds" (also referred to in the record as "keyboards") which is that portion of the piano upon which are placed the piano keys. The Board found each "keybed" to weigh approximately 27 pounds and that Steffen's duties of sanding the "keybeds" constituted routine work duty from time to time in the one and one-half month period prior to November 26, 1969.

On October 13, 1969, Steffen consulted her family physician, Dr. Panos, regarding a back ailment. In a letter stipulated into evidence, Dr. Panos stated that he had diagnosed the ailment as "acute lumbar strain with probable 'disc' syndrome." Steffen returned to work three or four days later, and performed all employment duties until November 26, 1969. On November 26, 1969, Steffen, while lifting a keybed, suffered a "sudden, sharp pain" in the back, the hip and down the right leg. On December 9, 1969, Steffen was hospitalized for a ruptured lumbar disc with nerve root pain down the right leg. A Dr. Bossard performed surgery removing the ruptured disc. He testified that Steffen's condition had reached a quiescent state with twenty-five percent permanent partial impairment.

Steffen filed a Form 9 Application on August 26, 1970, and, following a single member hearing, was awarded benefits.

Estey requested, and was granted, a hearing by the full Industrial Board which, on June 27, 1972, affirmed the original award. This court has twice ordered the Board's findings made more specific.[1] On November 18, 1974, the Board filed a Certification of a Corrected Award. The Corrected Award essentially found that Steffen did not suffer from an aggravated pre-existing injury; that she was performing her normal, usual, and routine duties when, on November 26, she experienced a sudden and sharp pain while lifting the keyboard; and that the act of lifting the keyboard and the sudden and untoward pain was an accidental injury arising out of and in the course of her employment for Estey. Further, the Board found that the weight of the keyboard (27 pounds) "constituted sufficient extra or unusual exertion causing the ruptured disc."

On December 17, 1974, Estey filed a brief directed to the Board's Corrected Award of November 18, in which the following issues were asserted:

1. The evidence is insufficient to show that Steffen's injury resulted from an accident arising out of the employment.
2. The Board's findings are predicated on expert opinion testimony given in response to hypothetical questions which did not assume correct facts.

## I
## EVIDENCE ESTABLISHES "ACCIDENT" WITHIN MEANING OF THE ACT

Estey contends that Steffen has shown no "accident" within the meaning of the compensation act because the evidence does not show an "untoward or unexpected event" such as a "slip, trip or unexpected event."

The parameters of compensibility are set forth in Ind. Ann. Stat. § 22-3-2-2 (Burns Code Ed. 1974) as ". . . personal

---

1. The Board's decision was reversed and the cause remanded by written opinion on May 11, 1973 (*Estey Piano Corporation* v. *Steffen* (1973), 156 Ind. App. 182, 295 N.E.2d 855); and on October 23, 1974, in this appeal, we ordered more specific findings.

injury or death by accident arising out of and in the course of the employment. . . ." The term "accident" imports some "mishap or untoward event not expected or designed", *Haskell and Barker Car Co.* v. *Brown* (1917), 67 Ind. App. 178, 117 N.E. 555; and must be distinguished from its meaning as used in accident insurance policies. *Wolf* v. *Plibrico Sales & Service Co.* (1973), 158 Ind. App. 111, 301 N.E.2d 756; *Indian Creek Coal & Mining Co.* v. *Calvert* (1918), 68 Ind. App. 474, 119 N.E. 519. In *The Studebaker Corp.* v. *Jones* (1937), 104 Ind. App. 270, 275-76, 10 N.E.2d 747, a factually similar case, this court stated:

> "Here appellee experienced a pain while in the act of lifting a hood to the conveyer, and his injury was traced by medical testimony to the act of lifting. The mere fact that the physical condition of an employee might make him more susceptible to the particular injury which resulted in his disability is no reason for holding that a disease or condition, rather than the accident, was the proximate cause of the injury upon which the allowance for disability is based; nor is it essential to determine the amount and extent of the strain, effort, or exertion necessary to be expended as a legal cause for a compensable injury. All workmen are not constituted alike. Some are stronger than others and more capable of doing the same work. Some would use more exertion or effort in performing the same labor, and because of their physical condition might be more susceptible to injury. The act of lifting the hoods to the conveyor undoubtedly required some physical effort and exertion which the board found contributed to the injury complained of and is compensable, however slight. While the work required of appellee may be characterized as ordinary, and such work may have been accomplished by other employees without injury, yet his injury was attached to a definite occurrence (that of lifting) incidental to his employment and within the well-defined meaning of the term 'accident' as used in the Workmen's Compensation Act." *See also* 1A Larson's *Workmen's Compensation Law*, § 38.10 (1973).

In the instant case, the evidence establishes that Steffen experienced a sharp pain on November 26 while lifting a piano keybed, and that the pain resulted from a ruptured lumbar disc. This event constitutes an "accident" within the meaning of the compensation act. *Wolf*

v. *Plibrico Sales & Service Co., supra; The Studebaker Corp.*
v. *Jones, supra; Morgan Packing Co.* v. *Monroe* (1934), 99
Ind. App. 321, 192 N.E. 320. Ancillary causation, such as a
slip or trip, need not necessarily be shown. *United States
Steel Corp.* v. *Douglas* (1955), 125 Ind. App. 212, 123 N.E.
2d 899.

A statutory concomitant to the existence of an accident
requires that such accident arise out of and in the course of
employment. *Tom Joyce 7-Up Co.* v. *Layman* (1942),
112 Ind. App. 369, 44 N.E.2d 998. Estey, in essence,
contests the Board's findings insofar as they conclude
that Steffen's injury arose out of her employment. It is gen-
erally held that an accident arises out of the employment when
there exists some causal nexus between the injury complained
of and the duties or services performed. *Tom Joyce 7-Up Com-
pany* v. *Layman, supra; Lasear, Inc.* v. *Anderson* (1934), 99
Ind. App. 428, 192 N.E. 762. In *Lasear, Inc.* v. *Anderson,
supra,* the court explained:

> "Causal relation is established when the accident arises out
> of a risk which a reasonably prudent person might com-
> prehend as incidental to the employment at the time of
> entering into it, or, when the facts show an incidental con-
> nection between the conditions under which the employee
> works and the injury." 99 Ind. App. at 434.

It is therefore incumbent upon claimant to prove the causal
relationship by substantial evidence of probative value. But
a claimant for benefits under the act need not negate
all other possible causes for the disability. *Rankin*
v. *Industrial Contractors, Inc.* (1969), 144 Ind. App.
394, 246 N.E.2d 410.

The evidence of record supports the finding that Steffen
sustained an accidental injury while lifting a 27 pound piano
keybed in the occasional, yet normal or routine, performance
of her duties. This establishes entitlement to workmen's
compensation benefit under the act.

Estey further contests the Board's finding that the weight

of the keybed which Steffen lifted "constituted sufficient extra or unusual exertion." This finding, Estey asserts, contradicts the Board's finding that the November 26 accident was not an aggravation of a pre-existing injury or back condition. However, this court has held such adjectives to be "surplusage, which may be disregarded." *Slaubaugh* v. *Vore* (1953), 123 Ind. App. 497, 110 N.E.2d 299. *See also* Small, *Workmen's Compensation Law* § 6.2 (1968 Supp.). *Compare U.S. Steel Corp.* v. *Dykes* (1958), 238 Ind. 599, 154 N.E.2d 111.

Even if it be accurate to say that the *Dykes* case was properly construed in *Douglas* v. *Warner Gear Div. of Borg Warner Corp.* (1961), 131 Ind. App. 664, 174 N.E.2d 584, and that the *Dykes* holding nullifies to some extent the rationale of *Slaubaugh*, it may be likewise accurate to state that such rationale is dissipated only in "heart attack" cases or in other situations in which the injury cannot be causally attributed to the employment. The Court in *Douglas* stated:

"We feel more restful in the view that the Supreme Court in the said Dykes case, *supra*, did very materially modify some of the statements and expressions in the said Slaubaugh and Douglas cases, *supra*, and while seemingly not considering it necessary to alter the result arrived at in said cases, did depart from the gradual and encroaching theory generally expressed or implied in said cases and previous cases that claims for compensation arising from afflictions of the heart of employees were to be gauged by a standard of less rigidity than that applied to claims of a different nature. In other words, we are impressed that by the said Dykes case, our Supreme Court annulled the idea which was then taking hold that the mere fact that an employee sustained a crippling or fatal heart attack while in the performance of the usual and ordinary tasks of his employment was sufficient to sustain a finding by the Board of an accident arising out of and in the course of his employment, and compensable.

The Court, rather, it seems to us, returned to the original concept in the Workmen's Compensation cases that to render a claim under such circumstances compensable there must be established a causal connection between the employment or conditions of the employment and the ensuing

heart failure. The Court, in said Dykes case, *supra,* announced in substance, as we see it, that to establish a compensable right it must be shown not merely that the employee suffered a heart attack while performing his usual routine everyday tasks but that there must be shown an 'event or happening beyond the mere employment itself.' Broadly, that it must be shown that the employment, or the conditions of the employment, must have been, in some proximate way, accountable for, conducive to, or in aggravation of or the hastening of, the failure activity of the heart." 131 Ind. App. 664, 672-673.

The case before us, however, is a "lifting" case. The "causal connection" factors emphasized in *Slaubaugh* retain vitality and application in such cases despite the fact that those factors are not easily applied in mere "bending" cases [*Dooley* v. *Richard's Standard Service* (1969), 145 Ind. App. 470, 251 N.E.2d 449; *City of Anderson* v. *Borton* (1962), 132 Ind. App. 684, 178 N.E.2d 904] or heart attack cases. *Lock-Joint Tube Co., Inc.* v. *Brown* (1963), 135 Ind. App. 386, 191 N.E.2d 110. The "event or happening beyond the mere employment itself" as seemingly required by *Dykes* is here present. The evidence shows and the Board found that a specific and definable incident or event took place, i.e., the lifting of a particular keybed at a particular moment. This incident provides the necessary causal nexus required by *Dykes* even though the particular incident or event may have been routine or normal in the sense of Steffen's employment duties. *Lock-Joint Tube Co., Inc.* v. *Brown, supra.*

Finally, it is noted that there exists in the present case conflicting medical evidence. It is well-settled that this court will not disturb the Board's finding where the "evidence tends fairly to support the findings and conclusions reached by the board", *C. & E. Trucking Corp.* v. *Stahl* (1962), 135 Ind. App. 600, 181 N.E.2d 21; *Indiana Car & Equipment Co.* v. *Celotto* (1919), 69 Ind. App. 341, 121 N.E. 834; nor will the court on appeal weigh conflicting evidence, *The Studebaker Corp.* v. *Jones, supra.*

## II.

## FAILURE TO OBJECT TO FORM OF HYPOTHETICAL QUESTIONS WAIVES APPELLATE CONSIDERATION

Estey complains of certain hypothetical questions propounded to Dr. Bossard in an oral deposition. Estey asserts that such questions were not justified by facts in evidence. However, the questions were not objected to by Estey at the taking of the deposition, at the single member hearing, or at the hearing before the Full Board. It is fundamental that objection to hypothetical questions cannot be initially asserted on appeal, and that failure to timely object forecloses appellate consideration. *Slaubaugh* v. *Vore, supra.*

The award of the Industrial Board is hereby affirmed, and pursuant to Ind. Ann. Stat. § 22-3-4-8 (Burns Code Ed. 1974) said award is ordered increased ten percent (10%).

White, J., concurs in result; Buchanan, J., concurs with opinion.

### CONCURRING OPINION

BUCHANAN, J.—I am compelled to concur only in the result in this case for two reasons:

(1) The Board made a specific Finding of Fact that the weight of the keyboard which the plaintiff lifted on November 26, 1969, "constituted sufficient extra or unusual exertion" to result in "an accidental injury".

(2) Certain Appellate and Court of Appeals cases are contrary to the rationale of *U.S. Steel Corp.* v. *Dykes* (1958), 238 Ind. 599, 154 N.E.2d 111.

The November 18, 1974, Findings of Fact appear to be inconsistent. After citing that Steffen's "regular and routine duties" consisted of handling various parts of pianos for sanding purposes and that she was "performing her normal, common, usual and routine duties" on November 26, when she experienced a "sudden and untoward pain in her back", and that "the lifting of the keyboards was part of her normal, usual and routine duties for her employer", the Board then

finds that the weight of the keyboard which the plaintiff lifted on November 26, 1969 "constituted sufficient extra or unusual exertion" to cause her injury. And there is testimony by Steffen which supports this finding.

Accordingly, our holding should be limited to reliance on the holding in *The Studebaker Corp.* v. *Jones* (1937), 104 Ind. App. 270, 10 N.E.2d 747, a similar "lifting" case.[1] (Neither Jones nor Steffen were found to be suffering from a pre-existing back condition.)

But like some other Appellate and Court of Appeals cases,[2] the language used in *Studebaker Corp.* seemingly eliminates the necessity of an "accident":

> "[*N*]*or is it essential to determine the amount and extent of the strain, effort, or exertion necessary to be expended as a legal cause for a compensable injury.* All workmen are not constituted alike. Some are stronger than others and more capable of doing the same work. Some would use more exertion or more effort in performing the same labor, and because of their physical condition might be more

---

1. Jones, together with three other employees, had the task of polishing automobile hoods on a conveyor line which required the lifting and turning of the hoods. He had no history of any illness. On the day of the accident two of the four men were absent which caused Jones and the other employee to unusually exert themselves. While lifting one of the automobile hoods, Jones "felt a pain in his left side. . . ."

This Court, affirming the Industrial Board's Award, noted that Jones "had suffered a collapsed lung . . ." as a result of "the strain and exertion in lifting this particular hood. . . ." The Court concluded:

"The act of lifting the hoods to the conveyor undoubtedly required some physical effort and exertion which the board found contributed to the injury complained of and is compensable, . . . and . . . his injury was attached to a definite occurrence (that of lifting) incidental to his employment and within the well-defined meaning of the term 'accident' as used in the Workmen's Compensation Act." 104 Ind. App. at 276, 10 N.E.2d at 749.

2. *General American Tank Car, etc.* v. *Weirick* (1921), 77 Ind. App. 242, 133 N.E. 391; *Morgan Packing Co.* v. *Monroe* (1934), 99 Ind. App. 321, 192 N.E. 320; *American Maize Products Co.* v. *Nichitorchick* (1940), 108 Ind. App. 502, 29 N.E.2d 801; *Slaubaugh* v. *Vore* (1952), 123 Ind. App. 497, 110 N.E.2d 299; *U.S. Steel Corp.* v. *Douglas, et al.* (1954), 125 Ind. App. 212, 123 N.E.2d 899; *Lock-Joint Tube Co., Inc.* v. *Brown* (1963), 135 Ind. App. 386, 191 N.E.2d 110 (criticizes *U.S. Steel Corp.* v. *Dykes, supra*); *Anaconda Aluminum Co.* v. *Aue* (1964), 136 Ind. App. 463, 202 N.E.2d 403; Larson, THE LAW OF WORKMEN'S COMPENSATION § 38.00-38.20 (Fifth Ed. 1973).

*See also,*

*Heflin* v. *Red Front Cash & Carry* (1947), 225 Ind. 517, 75 N.E.2d 662.

susceptible to injury. *The act of lifting the hoods to the conveyor undoubtedly required some physical effort and exertion which the board found contributed to the injury complained of and is compensable, however slight.* (Emphasis suplied.) 104 Ind. App. at 275-76, 10 N.E.2d at 749.

And in *Indian Creek Coal & Mining Co.* v. *Calvert* (1918), 68 Ind. App. 474, 119 N.E. 519 (a case in which a miner died while performing his normal and usual duties with no known pre-existing condition) :

"'[W]here an employe afflicted with disease receives a personal injury under such circumstances as that he might have appealed to the [Workmen's Compensation] act for relief on account of the injury had there been no disease involved, but the disease as it in fact exists is by the injury materially aggravated or accelerated, resulting in disability or death earlier than would have otherwise occurred, and the disability or death does not result from the disease alone progressing naturally as it would have done under ordinary conditions, but the injury, aggravating and accelerating its progress, materially contributes to hasten its culmination in disability or death, there may be an award under the compensation acts.' *In re Bowers* (1917), 65 Ind. App. 128, 133, 116 N.E. 842." 68 Ind. App. at 480-81, 119 N.E. at 521.

In my opinion *Indian Creek Coal & Mining Co.,* and the cases that followed it, are contrary to *Dykes* and should be overruled. In effect, any unexpected injury becomes an accidental injury.

Such language appears to transform the Workmen's Compensation Act into a super insurance policy allowing compensation contrary to the rationale of the *Dykes* case, which is the Supreme Court's most recent pronouncement as to what constitutes an "accident". Judge Bobbitt's closing paragraph reads:

"[7] The mere showing that he was performing his usual routine everyday task when he suffered a heart attack does not establish a right to workmen's compensation because there was no event or happening beyond the mere employment itself." 154 N.E.2d at 119.

Geoffrey Segar summarizes the "accident" requirement in the 1968 Cumulative Supplement to Small's Workmen's Compensation Law of Indiana:

". . . [I]t should be noted that the Court *still requires some untoward or unexpected event,* . . . so that the mere fact of being employed at the time a disability arose will not suffice."

\* \* \*

"Usual and regular or ordinary activity such as sweeping, shoveling coal, opening a rail car door, the regular milking of cows, and carrying a grain door up a flight of stairs have been held as non-compensable in awards affirming such Industrial Board findings. [*Campbell* v. *Colgate Palmolive Co.* (1962), 134 Ind. App. 45, 184 N.E.2d 160; *Douglas* v. *Warner Gear* (1961), 131 Ind. App. 664, 174 N.E.2d 584; *Blevins* v. *Consumers Ice & Fuel Co.* (1959), 129 Ind. App. 257, 156 N.E.2d 103; *Bundy* v. *Concrete Ready Mix Co.* (1960), 130 Ind. App. 542, 167 N.E.2d 477; *Arford* v. *State of Ind.* (1959), 129 Ind. App. 312, 156 N.E.2d 401 *Shaffer* v. *Indiana Gas & Chem. Corp.* (1965), 137 Ind. App. 471, 209 N.E.2d 919: footnotes 98b to 98g, inclusive.] (Emphasis supplied.) Secs. 5.1 and 6.2, pp. 33, 42 (Cum. Supp. 1968).

*Also see City of Anderson* v. *Borton* (1962), 132 Ind. App. 684, 178 N.E.2d 904.[3]

In addition to my disagreement with the language in some Appellate and Court of Appeals cases apparently dispensing with the need for an accident, I also find it unnecessary to distinguish heart attack and bending cases from lifting cases. The rationale of *Dykes* applies in either event.

---

3. "In view of the fact that there is no conflict in the evidence concerning the performance of the act of bending over to lift the trap door when the pain occurred, and since there was nothing unexpected nor any unusual exertion connected with this incident, and with no conflict in the evidence that appellee's back had degenerated since his first injury to a point where pain and further damage might occur merely by the act of walking about as a normal person, we are of the opinion that the evidence was insufficient to prove that the injury occurred because of any increase in his work load or of any extra exertion. We are also of the opinion that there was a lack of any evidence to prove that the act of bending over to lift a trap door was anything so unusual to appellee's customary work as to cause an aggravation of a previously existing degenerated back.

"Following the present thinking of the Supreme Court in view of its holding in the *Dykes* case, *supra*, it seems logical that the only conclusion which reasonable men could reach from the evidence in this case, with all inferences reasonably deductible therefrom, that the appellee did not suffer injury as a result of and in the course of his employment.

"For the foregoing reasons, the award of the Industrial Board is contrary to law and must be reversed."

My analysis of the cases interpreting an "accident arising out of and in the course of the employment" leads me to the conclusion that the word "accident"[4] has been elasticized to the breaking point. In the search for extension of employer's liability for accident-connected injuries, the law on this subject has become hopelessly conflicting and confused . . . and would appear to have gone far beyond the original intent of the framers of the Workmen's Compensation Act. It appears to me that *Dykes* has been consistently limited by the Appellate Court and the Court of Appeals and that clarification is in order.

Hidden away in a dust bin of 1918 history is the dissent of Judge Dausman in *Indian Creek* accurately forecasting the results of judicial legislation that equated normal exertion with "accident." He said:

"While the deceased was shoveling coal in the usual way, and while his muscular activity was accompanied by the natural and normal blood pressure, the aorta burst because it had been thinned and *weakened by disease. There is a direct causal connection between the disease and the death,*

---

4. Professor Small summarizes the definition of "accident" in terms of an unforeseeable result and the cases by and large have followed this tack:

"[An accident] may lay the ground for the giving of compensation if the *results of the action were not forseeable* at the time."

\* \* \*

". . . So interpreted, the statute [§ 40-1202] only requires a claimant to show that his injury . . . was accidentally sustained. If he can show that the *injury was not reasonably foreseeable,* it is sustained accidentally." [Footnotes omitted.] (Emphasis supplied.)

Small, WORKMEN'S COMPENSATION LAW OF INDIANA, § 5.2, pp. 99-100 (First Ed. 1950).

See also *Indian Creek Coal & Mining Co.* v. *Calvert, supra:*

"[I]t is enough that the causes . . . should produce a result which on a particular occasion is neither designed nor expected. The test as to whether an injury is unexpected and . . . occurs 'by accident' is that the sufferer did not intend or expect that injury would on that particular occasion result from what he was doing." 68 Ind. App. at 492.

See also,

General American Tank Car, etc. v. *Weirick, supra; Morgan Packing Co.* v. *Monroe, supra; The Studebaker Corp.* v. *Jones, supra; American Maize Products Co.* v. *Nichitorchick, supra; Slaubaugh* v. *Vore, supra; U.S. Steel Corp.* v. *Douglas, et al., supra; Lock-Joint Tube Co., Inc.* v. *Brown, supra; Anaconda Aluminum Co.* v. *Aue, supra;* Larson, THE LAW OF WORKMEN'S COMPENSATION, *supra.*

*and that excludes the idea of death by accident. . . .* I am compelled to the conclusion that the deceased came to his death by disease, and not by accident. . . ." [The majority opinion recognized the validity of medical testimony that Calvert's diseased aorta may have been due to "chronic alcoholism".]

\* \* \*

"[T]he effect of the majority opinion is to extend the law *by judicial construction to include also life insurance. . . .* It will result in awarding compensation in every case of death by heart failure, apoplexy, or other disease of any kind whatsoever, on the mere statement that the death *might* have been accelerated by the normal 'strain and exertion' of the deceased's usual work; for that *'strain and exertion' always exists. To bring about such a result by judicial construction is a palpable invasion of the province of the legislation."* (Emphasis supplied.) 68 Ind. App. at 506-7, 509, 119 N.E. at 528.

Thus, it would appear that by liberally construing the Workmen's Compensation Act the word "accident" has almost been construed out of existence. In part at least, this is due to the presence of disease as a factor in industrial injuries . . . disease which may or may not be employment related.

Until 1937 there was no legislation awarding compensation for industrial diseases and liability was continually expanded by Appellate Court fiat. Even today the schedule of compensable diseases in the Occupational Disease Act is limited and the courts and the lawyers hark back to precedents prior to 1937, the date of adoption of the Occupational Disease Act. In effect, disease or abnormal physical condition which may or may not be employment related have been compensated as "accidental injuries".

Thus, I am forced to concur in the result of this case because its facts do not bring it strictly within the holding of *Dykes,* and because in deciding that 1958 case, *Slaubaugh* v. *Vore* (1952), 123 Ind. App. 497, 110 N.E.2d 299, and *U.S. Steel Corp.* v. *Douglas, et al.* (1954), 125 Ind. App. 212, 123 N.E.2d 899, both of which were unusual or extreme exertion cases, were not disapproved but were distinguished. Until either

the legislature acts or the Indiana Supreme Court redefines an "accident", I see no other course.

NOTE.—Reported at 328 N.E.2d 240.

